485 So.2d 939 (1986)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
C. SCHEXNAYDER, INC.
No. CA 84 1368.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
On Rehearing April 15, 1986.
*940 John L. Goldsmith, Bernard L. Malone, Jr., Baton Rouge, for plaintiff-appellee State of Louisiana, Dept. of Transp. and Development.
Raymond Gautreau, Donaldsonville, for defendant-appellant C. Schexnayder, Inc.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Plaintiff expropriated two small parcels of land from defendant's approximately 1,130 acres of contiguous land, all except ten acres of which is located in the western part of Ascension Parish. The two separate expropriations were accomplished under the Quick Taking Statute, La.R.S. 48:441 et seq., by two separate takings, the first suit having been filed in St. James Parish on April 3, 1979 and the second suit having been filed in Ascension on February 3, 1983. In the first taking, consisting of 2.99 acres of the ten acres located in St. James Parish, plaintiff deposited in the Registry of the Court $2,699.00. In the second taking, consisting of 14.062 acres located in Ascension Parish, plaintiff deposited $58,372.00.
Defendant asserted in its answer filed in each suit that the amount deposited by plaintiff was not just and adequate compensation for either taking. Additionally, defendant sought attorney fees of 25% of the difference between the amount deposited and the amount finally awarded, and for all costs, including expert appraiser's fees. On defendant's motion the St. James and Ascension Parish suits were consolidated for trial and were tried in Ascension Parish on March 23, 1984.
The only question presented at trial, and in this appeal, is the value of the land taken for highway construction purposes. Defendant made no claim for severance damages.
The trial court accepted the valuations of Mr. Carr T. Dowell, III, one of plaintiff's two appraisers. Mr. Dowell testified that the 2.99 acres had a value of $3,000.00 per acre at the time of taking and the 14.062 acres had a value of $4,500.00 per acre at the time of taking. Mr. Kermit Williams, defendant's appraiser, fixed the per acre value at $13,500.00 for the 2.99 acres and $15,400.00 for the 14.062 acres. Plaintiff's other appraiser, Peter J. Talluto, fixed the per acre value at $2,600.00 and $3,500.00 for the first and second takings, respectively.
The trial court rejected Mr. Williams' opinion that the highest and best use of the subject properties was highway commercial, reasoning, in part, as follows:
The extreme difference in values is due to the fact that Messers. Dowell and Talluto established the highest and best use of the subject property to be agricultural use and some potential for residential development. Mr. Williams established the highest and best use to be highway commercial.
The Court is of the opinion that the highest and best use of the subject properties is conversion to agricultural use. The sales used by Mr. Williams are not truly comparable in nature to the subject tracts as they consist either of small tracts in or near a small shopping center some seven or eight miles away in Assumption Parish in close proximity to residential areas or some isolated sales of property adjoining the Sunshine Bridge in close proximity to the City of Donaldsonville. All the above comparables have unique factors of location and accessability (sic) not found in the subject tracts.
After reviewing all of the testimony and evidence that has been presented ... and considering all the comparables and the respective approaches to value taken by ... [all three appraisers,] this Court is of the opinion that [Mr. Dowell's opinion of valuation is the most accurate]. (Brackets supplied.)
*941 Defendant assigns as error the trial court's (1) accepting Mr. Dowell's opinion that the highest and best use of subject property was agricultural and in accepting the "comparable sales" utilized by Mr. Dowell in arriving at valuation, (2) giving any weight to the opinion testimony of either Mr. Dowell or Mr. Talluto because neither of them were familiar with the subject property, the area, the growth potential, and "except for an isolated instance... years before" neither appraiser had "done any work in the area" where the subject property is located, and (3) failing to adopt the testimony of Mr. Williams concerning highest and best use, past growth, and potential growth, based on his familiarity with the area and the "tremendous amount of work" he has done in the area.
This court, in State, Through Department of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir.1979), found no manifest error in the district court's acceptence of the opinion testimony of Kermit Williams, reasoning, in part, as follows:
In expropriation proceedings, the trial court's ... evaluation of, and the weight given to, the testimony of expert witnesses will not be disturbed on review absent a showing of manifest error....
The trial judge accepted Williams' opinion ... [and] we believe his testimony... is corroborated by the facts in the record and is not entirely speculative. 372 So.2d at 634. (Brackets and elipsis supplied.)
In State, Through Department of Transportation v. Townsend, 473 So.2d 99 (La.App. 3d Cir.1985), the Third Circuit Court of Appeal, on rehearing, reiterated that "A trial judge may give whatever weight he deems appropriate to the testimony of any and all witnesses in making his factual determination of the property taken, and his fixing of the value will not be disturbed in the absence of manifest error." The court observed that "The trial court heard the testimony of three appraisers and accepted the conclusion of one over the other two with respect to the value of the cleared farmland" and held that conclusion "was not manifestly erroneous." 473 So.2d at 105.
All three appraisers utilized the market data approach to valuation in arriving at their respective opinions of the value of the land at the time of each taking. The "market data" approach employs the use of "comparable sales" in ascertaining market value.
As stated in Dakin & Klein's scholarly treatise, Eminent Domain in Louisiana (The Bobbs-Merrill Co., Inc., 1970), § 5(A), p. 181:
... The term "comparables" refers to an appraisal technique which consists of evaluating sales of property deemed comparable to the subject property in order to estimate the value which would be placed upon the subject property by the market itself. In theory and practice, the comparable sales approach is based upon the economic principle of substitution: "When a property is replacable in the market, its value tends to be set at the cost of acquiring an equally desirable substitute property....
Whether a particular sale of a parcel is found to be comparable depends upon a number of factors. The most frequently judicially considered factors include proximity in time and circumstance of the sale, location of the land, size of the parcel, and physical characteristics of the land.
. . . . .
§ 5(B)(2)(b) contains the observation that:
Generally, sales of similar property must be in the vicinity of the property being expropriated before they can be considered comparable. This means that the determination of the value of property being expropriated will be predicated upon the use of only such prior sales of other property as are within a reasonable distance of the property involved and situated within the same or the same type locality or area as the subject property.
. . . . .

*942 Proximity as to distance and locality have generally been considered by the courts as essential characteristics for a prior sale to be considered a comparable....
... [Louisiana Power & Light Co. v. de Bouchel, 143 So.2d 270, (La.App. 4th Cir.1962)] ... held that geographical comparability in normal circumstances is not met when the prior sale offered is some ten miles distant from the subject tract.
Furthermore, Louisiana courts have recognized the comparable locality requirement by affirming that a prior sale that is within the required reasonable distance of the subject property must then be considered as to its comparable locality characteristics. This means that the prior sale must be comparable to the subject property in relation to highways, as to access, convenience, type parish,... and other characteristics which the subject property might possess. The closer the prior sale comes to possessing the same characteristics to the same extent as the subject property, the more comparable the property will be.
Dakin and Klein address the factor of "physical comparability" in § 5(B)(2)(d), as follows:
The extent of comparability, other than as to proximity of time or place, is determined by a comparison of the physical attributes of the sales offered as comparables with the property being expropriated;... Such comparisons have to do with considerations of size, condition, and topographical features.
Size as an element of physical comparison is of varying significance. It can destroy sales comparability or prove the primary basis for considering a sale to be a true comparable. It may, however, be of only lesser significance so that a sale, because of the difference in size of the tracts, may be held not strictly comparable. Significance depends upon the effect size has on the value of the land being expropriated; very small tracts cannot be used to control judgment as to the value of a single larger tract available for industrial use, ...
Of the approximately 1,130 acres defendant owned, approximately 144 acres would be affected by the construction of proposed La. Highway 3127 across the land to its intersection with existing La. Highway 70. Therefore, the value of the pre-expropriation 144 acres, rather than the entire 1,130 acre parent tract, was before the trial court and is now before us. Defendant's appraiser, Mr. Williams, used 11 alleged comparable sales in his appraisal report and testified to a twelfth sale at trial. The prior sales relied on by Mr. Williams as comparables were within 4 to 5 miles from the subject properties, on La. Highway 3089, which "sort of bracket the [subject] property," some of the sales being approximately one-fourth mile from a shopping center. Defendant owns the parent tract which extends one mile on each side of the subject land. As a consequence of the two takings, the land remaining after the takings consists of two parcels containing 48.43 acres and 78.49 acres, respectively. Before the 144 acres was fictitiously severed from the 1,130 acre parent tract, the 144 acres had a frontage of 4,167 feet on La. Highway 70; after the construction of proposed La. Highway 3127 La. Highway 70 frontage would be reduced 300 feet but the remainder would acquire 2,500 feet of frontage on both sides of proposed La. Highway 3127.
The sales Mr. Williams used as comparables for formulating his opinion as to the value of the first 2.99 acres taken were sales of 2.8 acres, 10 acres and 5.96 acres. He calculated the fair market value of the first taking to be $13,500.00 per acre, after making a 10% adjustment for better comparability based on location of the prior sales and the subject property. Mr. Williams based his valuation opinion on the second taking on the foregoing three prior sales as well as sales of 1.44 acres, 1.07 acres, 3.2 acres, 1.55 acres, and 6 acres; he opined that the fair market value of the second taking was $15,400.00 per acre, after making a 10% adjustment for better *943 comparability (location) and 20% adjustment for size.
Mr. Dowell used as comparables three prior sales. The first sale was of 1,674 acres on June 18, 1981; the second and third sales were of 13.051 acres and 21.92 acres on March 25, 1981 and April 14, 1978, respectively. The property in the first sale "fronted on La. 70 approximately three miles south of subject [property]"; the second property fronted on La. 70 "near La. 308 and Bayou Lafourche" and the third fronted on "either side of La. 70 approximately one mile south of subject [property]." While conceding that the sales he used "are not what you would call particularly good sales for a comparable" because the first sale "is much much larger" than the subject property "and two and three are much smaller," Mr. Dowell stated they "tend to indicate a range all the way from $2,127.00 an acre to $5,000.00 an acre" and "based on these sales and a general review of all the market activity in the area" he opined that the market value of the second taking, on February 3, 1983, was $4,500.00 per acre and the market value of the first taking, on March 3, 1979, was $3,000.00 per acre. Mr. Dowell stated that his research did not reveal "any 140 or 50 acre sales" but if he had found them he "certainly would've" used them.
Peter Talluto, plaintiff's other appraiser, utilized three sales in making his valuation analysis for the first taking. He utilized a sale of 315 acres in St. James Parish, a sale of 325 acres in St. Charles Parish, and a sale of 21.92 acres in Assumption Parish. Mr. Talluto used the foregoing three sales, and the sale of the same 1,674 acres, in Assumption Parish, used by Mr. Dowell, in forming his opinion of the value of the second taking.
Mr. Williams opined that the per acre value of the first and second takings was $13,500.00 and $15,400.00, respectively, based on his stated belief that the highest and best use of the 144 acres before each taking was "highway commercial" rather than agricultural or a combination of agricultural/rural residential. Although the 144 acre parcel, from which was taken 2.99 acres and 14.062 acres in the first and second takings, respectively, did not have any frontage on either La. 3089 (the Sunshine Bridge or River Road) or on the Mississippi River, the parent tract of 1,130 acres did have both La. 3089 and river frontage. Mr. Williams' opinion as to value was based on the premises that there would be a market, in the foreseeable future, for highway commercial sites ranging in size from ten to fifteen acres and that the 48.43 and 78.49 acre parcels would be sold in 10 to 15 acre lots for a variety of commercial uses, including mobile home parks, restaurants, supermarkets and other "support" type businesses. He was of the opinion that the only thing that needed to be done to market the land in 10 to 15 acre lots was to survey it because the land was mostly cleared and well drained by a system of ditches and each remaining parcel had sufficient depth to subdivide the land into lots with good width and depth.
Mr. Dowell, whose opinion the trial court accepted as the basis of the judgment establishing the value of the land, testified that the 144 acres consisted mostly of forested areas but that the cleared areas were best suited for use in growing row crops and for use as pastureland. Mr. Dowell's appraisal report states the land was 70% wooded.
The trial court heard the live testimony of all three appraisers and had the opportunity to, and apparently did, evaluate the appraisal reports introduced into evidence and made a part of this appeal record. After taking into account the testimony and exhibits, including survey plats and area maps, the trier of fact held that the highest and best use of the subject properties remaining after the two takings is agricultural use.
Although all prior sales used as comparables by Mr. Dowell leave much to be desired from the standpoint of the relative sizes of the subject property and the "comparables," the sales meet the criteria of "proximity as to distance and locality" which "have generally been considered ... *944 as essential characteristics for ... prior sale[s] to be considered ... comparable[s]." Eminent Domain in Louisiana (1970), § 5(B)(2)(b). We believe the sales of 13.051, 21.92 and 1,674 acres, Mr. Dowell's "comparables," are no less comparable than Mr. Williams' "comparables" which ranged in size from 1.07 acres to 10 acres. Certainly all three of Mr. Dowell's prior sales had frontage on La. Highway 70 and were located 1, 6, and 3 miles, respectively, from subject property. Four of the sales Mr. Williams used as comparables were located "at the end of La. Highway 70 where it intersects with [La. 3089]" and "in the direction of the Sunshine Bridge." All were smaller than the smallest of Mr. Dowell's prior sales. Some of Mr. Williams' "comparables" were located on La.Highway 3089, also known as the River Road and Sunshine Bridge Road; none were as close to subject property as two of Mr. Dowell's "comparables." Seven of Mr. Williams' prior sales, including some not used in calculating price per acre because they were less than one acre sales, were located "perhaps two or three miles south... of subject property going toward Napoleonville."
Based on our review, we hold that the trial court was not manifestly erroneous in accepting Mr. Dowell's opinion both as to the highest and best use of the subject property and the value of the property at the times of the two different takings.
Neither the reasons for judgment nor the judgment addressed the matter of attorney's fees although defendant prayed for that item in its answer and in its post-trial memorandum. Perhaps the failure to award attorney's fees was purely an oversight. In any event, we will treat the failure of the trial court to award an attorney's fee as an oversight rather than as a tacit refusal to award one. Defendant did not assign as error the trial court's failure to award attorney's fees and the issue was not briefed on appeal. However, in its answer and post-trial memorandum, as well as in its appellate brief, the landowner prayed for the maximum allowable attorney's fee.
Rule 1-3, Uniform Rules-Court of Appeal, declares that "The Court of Appeal will review only issues which were submitted to the trial court and which are contained in specifications of error, unless the interest of justice clearly requires otherwise." La. C.C.P. art. 2164 directs the appellate court to "render any judgment which is just legal, and proper upon the record on appeal." Official Revision Comment (a) to Article 2164 states, in part, that "The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below." We believe that the interests of justice requires us to address the issue of attorney's fees provided for by the "Quick-Taking" statute, La.R.S. 48.441 et seq.
La.R.S. 48:453(D) authorizes, but does not require, that "reasonable attorney fees ... be awarded by the court if the amount of compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment." However, the attorney fees cannot "exceed 25% of the difference between the award and the amount deposited in the registry of the court."
The amount awarded for the first taking was $8,970.00, less $2,699.00 previously deposited, or an increased award of $6,271.00, together with legal interest from April 3, 1979. Thus, the maximum attorney's fee which can be awarded is 25% of the net increase in compensation, including interest thereon, from April 3, 1979. The amount awarded for the second taking was $65,767.00, less $53,372.00 previously deposited, or an increased award of $7,395.00, together with legal interest from February 3, 1983. Thus, the maximum attorney's fee which can be awarded is 25% of the net increase in compensation, including interest thereon, from February 3, 1983.
In State, Department of Transportation v. Boyce Gin Co-Op., 397 So.2d 1087 (La.App. 3d Cir.1981), the compensation *945 awarded exceeded the amount deposited by $162,053.00 and the trial court awarded attorney's fees in the amount of $10,500.00. The court of appeal held "this award to be reasonable and conclude that such sum is sufficient to compensate for the services rendered by counsel for defendant both at the trial level and on appeal." In State, Department of Transportation v. Van Willet, 383 So.2d 1344 (La.App. 3d Cir. 1980), writ denied, 390 So.2d 1337 (La. 1980), plaintiff deposited $993.00 and the trial court fixed just compensation at $818.53. On appeal, the compensation was increased to $25,294.53, or $24,361.53 more than was deposited. The court of appeal determined that an attorney's fee of $5,000.00 "under the circumstances of this case ... is appropriate" and it awarded that amount.
Even the cold appeal record convinces us that defendant's counsel was both diligent and skilled and expended preparation and effort in presenting the landowner's case for an increase in compensation; he did the best he could with the facts that he had to work with. The fact that the trial court did not fix the value based on Mr. Williams' opinion, stated in testimony and in the appraisal report, or other sum higher than the trial court determined was just and adequate compensation, cannot be attributed to any shortcomings of defendant's attorney.
Under the circumstances of this case, as reflected by the record as a whole, we conclude that the appropriate attorney's fee to which defendant is entitled is the maximum allowed by law, amounting to $3,416.50.
The trial court taxed defendant's appraiser's fee as court costs and further ordered plaintiff to "pay all costs of these proceedings as are legally assessable against it." The total costs at the trial level and of this appeal, in the amount of $393.00, are also taxed to plaintiff. State Department of Transportation v. Boyce Gin Co-Op., supra, at 1093; State, Department of Transportation & Development v. Winn, 463 So.2d 648 (La.App. 4 Cir. 1984); Sterks v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552 (La.App. 3 Cir.1968), on rehearing. La. R.S. 13:4521, which limits the liability of public bodies from court costs to those expressly provided for in the statute, is inapplicable to expropriation proceedings when the condemnor does not deposit the proper value of the property taken. Sterks, supra, at 556. La.R.S. 13:5112(A) is inapplicable in this case because the State agency is plaintiff herein.
Accordingly, the judgment of the trial court is affirmed to the extent it (1) granted judgment in favor of the defendant and against the plaintiff for the sum of $8,970.00, less a credit for $2,699.00 previously deposited, for the first taking on April 3, 1979, together with statutory or legal interest on the net increase from that date, (2) granted judgment in favor of defendant for the sum of $65,767.00, less a credit for $53,372.00 previously deposited, for the second taking on February 3, 1983, together with statutory or legal interest on the net increase from that date, (3) fixed defendant's expert witness's fee and taxed it as costs of court, and (4) cast plaintiff for "all costs except for those the payment of which is specifically exempted by law." The judgment is amended to provide for an attorney's fee consisting of (1) 25% of $6,271.00 together with legal interest thereon from the date of this decision until paid, and (2) 25% of $7,395.00, together with legal interest thereon from the date of this decision until paid. The judgment is amended, and as amended, is affirmed.
AMENDED AND AFFIRMED.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.

ON REHEARING
PER CURIAM.
Appellee, DOTD, has applied for a rehearing, contending that the district court misstated the deposits for the first and second takings as $2,699.00 and $53,372.00, respectively, instead of $2,691.00 and $58,372.00, which appellee states were *946 the actual deposits, and that "said errors regarding deposits were inadvertantly (sic) carried forward in the computations" in our decision amending and affirming the trial court judgment. Appellee also contends that we "awarded interest on attorney fees although it was not asked for in the defendant's reconventional demand, post-trial memorandum nor (sic) appellate brief."
In the decretal portion of our original opinion we stated, inter alia, that we affirmed the trial court judgment in these consolidated suits (filed in two parishes within the same judicial district) "to the extent it (1) granted judgment in favor of the [landowner] ... for ... $8,970.00, less a credit for $2,699.00 ... deposited, for the first taking [filed in St. James Parish] ..., (2) granted judgment in favor of [the landowner] for ... $65,767.00, less a credit for $53,372.00 ... deposited, for the second taking [filed in Ascension Parish] ..." In doing so, we utilized the figures stated in the trial court's reasons for judgment assigned May 30, 1984 rather than the figures stated in the judgment rendered, read and signed on the same date; the judgment states the figures as $2,699.00 and $58,372.00. The motion for authority to withdraw funds deposited in the Registry of the Court in the Ascension Parish suit states the amount deposited as $58,372.00; that pleading was signed by counsel for both appellant landowner and the expropriator, appellee. We erred in stating the amount of the deposit in the Ascension Parish suit. The record in the St. James Parish suit is not a part of the record on appeal. Therefore we do not know whether the amount deposited in that matter was $2,699.00, as stated in the judgment, or $2,691.00, as stated in appellee's application for rehearing. We therefore, accept the figures stated in the judgment which appellee prayed in its brief "be affirmed."
Although we erred in stating the deposit in the second taking to be $5,000.00 less than it actually was, we do not agree with appellee's statement in its application for rehearing that the "errors regarding deposits were inadvertantly (sic) carried forward in" our computations, presumably referring to attorney's fees. $65,767.00 minus $58,372.00 equals $7,395; we amended the trial court judgment by awarding, as attorney's fees, "(1) 25% of $6,271 together with legal interest thereon from the date of this decision until paid [for the first taking], and (2) 25% of $7,395.00, together with legal interest thereon from the date of this decision until paid" for the second taking. Thus, it is readily apparent that although the figure "$53,372.00" in the decree was a misstatement, we used the correct figures in determining the basis for the statutory attorney's fee, i.e., the difference between the amounts deposited contemporaneously with filings of both quick-taking expropriation suits and the amounts awarded by the trial court as just compensation for both takings.
Appellee states that we awarded interest on attorney's fees although appellant landowner did not seek it in either the trial court or on appeal. We utilized, but did not cite, La.C.C. art. 1938 (now art. 2000) and La.C.C.P. 2164, as our basis for awarding interest on attorney's fees. La.C.C.P. art. 1921 requires the court to "award interest in the judgment as prayed for or as provided by law." Paragraph "15" of appellant's answer alleges that the landowner "is entitled to `just compensation' of $216,554.80, together with legal interest and attorney fees as provided by law." While that paragraph perhaps should have been set apart from the answer proper, in language and in a format usually seen in a dual pleading styled "answer and reconventional demand," in essence defendant's answer did assert entitlement to more money than was deposited and it sought that sum "with legal interest and attorney fees as provided by law." Substance prevails over form. In our opinion, defendant sought legal interest on any sum of money the court deemed he was entitled to, including interest on an attorney's fee award.
La.R.S. 48:453(E) authorizes the court to award attorney's fees if the compensation awarded is greater than the amount deposited at the time of the taking and La.R.S. 48:455 provides that the judgment "shall *947 include, as part of the just compensation awarded, legal interest on the amount finally awarded" to the extent the award exceeds the deposit.
Appellee cites State, Department of Transportation and Development v. Taylor, 461 So.2d 1282 (La.App. 3d Cir.1985), writs denied, 464 So.2d 1382 (La.1985) and 464 So.2d 1383 (La.1985), as authority for the proposition that we erred in awarding interest on the attorney's fee award. In Taylor, a five judge panel of the court of appeal, in a 4-1 decision, characterized attorney fees as an "accessory award and in fact being determined based upon the existence of a `judgment.' "The court then held "[a]ttorney fees are thus not part of the Section 453 judgment. Thus Section 455 authorizing interest on the judgment is not authorization for awarding interest on the attorney fees." 461 So.2d at 1285. ACCORD: State, Department of Transportation and Development v. Henry, 468 So.2d 1262 (La.App. 3d Cir.1985), State, Department of Transportation and Development v. Ford, 470 So.2d 389 (La.App. 3d Cir.1985), and State, Department of Transportation and Development v. Townsend, 473 So.2d 99 (La.App. 3d Cir. 1985).
Although we are not bound by decisions of another intermediate appellate court, we now believe that we erred in decreeing legal interest applied to the attorney's fee awarded in our decision.
Because our decree in this Per Curiam on application for rehearing is adverse to appellant, we will afford it an opportunity to seek a rehearing within fourteen days from rendition of this Per Curiam opinion limited to the change in the decree.
For the foregoing reasons we grant the rehearing for the sole purpose of amending our original decree in this matter and it is amended to read as follows:
Accordingly, the judgment of the trial court is affirmed to the extent it (1) granted judgment in favor of the defendant and against the plaintiff for the sum of $8,970.00, less a credit for $2,699.00 previously deposited, for the first taking on April 3, 1979, together with statutory or legal interest on the net increase from April 3, 1979, (2) granted judgment in favor of defendant for the sum of $65,767.00, less a credit for $58,372.00 previously deposited, for the second taking on February 3, 1983, together with statutory or legal interest on the net increase from February 3, 1983, (3) fixed defendant's expert witnesses' fees and taxed those fees as costs of court, and (4) cast plaintiff for "all costs except those the payment of which is specifically excepted by law." The judgment is amended to provide for an attorney's fee in the amount of $3,416.50, being twenty-five percent of the difference between the deposits for both takings and the sums the trial court awarded appellant-landowner as just compensation. The judgment is amended, and, as amended, is affirmed.
AMENDED AND AFFIRMED.