L SAUNDERS, Judge.
This appeal arises from a declaratory judgment issued by the trial court. The trial court found that an insurance policy issued by Clarendon National Insurance Company provided James Walker and Doris Walker with $500,000.00 of uninsured motorist coverage. Clarendon National Insurance Company appealed arguing that the trial court erred in finding $500,000.00 of coverage, and asserting that the policy at issue only provided James Walker and Doris Walker with $20,000.00 in uninsured motorist coverage. On appeal, we reverse and remand, finding that the trial court did not adequately address James Walker and Doris Walker’s assertion that uninsured motorist coverage under the policy should have been $1,000,000.

FACTS

This matter arises out of an automobile accident which occurred on March 29, 1999. At the time of the accident, James Walker was operating a 1999 Dodge Neon, owned by Acadiana Dodge, Inc., and covered under an insurance policy issued by Clarendon National Insurance Company (Clarendon). Doris Walker was a passenger in the same vehicle. While they were occupying -the Dodge Neon, James and Doris (hereinafter Plaintiffs) were involved in a collision with a vehicle owned and operated by Arthur Ray Miles. Plaintiffs sustained injuries as a result of the accident.
*165 On March 13, 2000, Plaintiffs filed suit against Clarendon and State Farm Mutual Insurance Company. Plaintiffs sought recovery of uninsured motorist (UM) benefits under the Clarendon policy issued to Acadiana Dodge, Inc.
On May 17, 2000, Clarendon filed a motion for summary judgment in the court below, seeking a finding that the limits of the UM benefits available to Plaintiffs would be $20,000.00. Then on May 22, 2000, Plaintiffs filed a motion for declaratory | judgment contending that the “DRIVE OTHER CAR COVERAGE-BROADENED COVERAGE FOR NAMED INDIVIDUALS” (hereinafter “DRIVE OTHER CAR”) endorsement was applicable to Acadiana Dodge, Inc. as “Named Insured” and owner of the vehicle Plaintiffs occupied at the time of the accident. Under that analysis, the UM limits of Acadiana Dodge, Inc. would be increased to $500,000.00. In the alternative, Plaintiffs argued that Acadiana Dodge, Inc. had not made a valid rejection/selection of lower UM limits as provided by La.R.S. 22:1406 et seq. Plaintiffs urged that the UM coverage provided under the Clarendon policy would be the same as the liability coverage provided, $1,000,000.00.
The trial judge held a hearing on Clarendon’s motion for summary judgment and Plaintiffs’ motion for declaratory judgment on July 5, 2000. In his judgment, the trial judge granted Plaintiffs’ motion for declaratory judgment, finding that the Clarendon policy at issue provided UM coverage at the time of the accident in the amount of $500,000.00. The trail court denied Clarendon’s motion for summary judgment. The trial judge signed the judgment on July 14, 2000. From this judgment Clarendon has filed the instant appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Clarendon asserts only one assignment of error. Clarendon asserts that the trial judge erred in denying its motion for summary judgment and in issuing a declaratory judgment determining that its policy provided $500,000.00 in UM coverage for Plaintiffs’ claims. Plaintiffs also ask us for relief. On appeal, Plaintiffs ask us to consider whether Acadiana Dodge, Inc.’s failure to execute a new UM | srejection/selection of lower limits violated La.R.S. 22:1406 D(l)(a)(i), therefore, having the legal effect of raising the UM limits under the Clarendon policy to the same amount as its policy limits, $1,000,000.00.
STANDARD OF REVIEW
Within their respective jurisdictions, courts of record may declare rights, status, and other legal relations between parties whether further relief is or could be claimed. La.Code Civ.P. art. 1871. Such declaration shall have the force and effect of a final judgment or decree. Id. We may review a declaratory judgment as we do other orders, judgments, and decrees, as a declaratory judgment is an appealable final judgment. Id.; See Succession of Brantley, 96-1307 (La.App. 1 Cir.6/20/97); 697 So.2d 16. In reviewing the trial court’s decision to grant a declaratory, judgment, the scope of our review is confined to a determination of whether the trial court abused its discretion by granting that declaratory judgment. Liberto v. Rapides Parish Police Jury, 95-456 (La. App. 3 Cir. 11/2/95); 667 So.2d 552.
UNINSURED MOTORIST COVERAGE
In its only assignment of error, Clarendon argues that the trial court erred in denying its motion for summary judgment and in rendering a declaratory judgment, *166 which determined that the UM coverage for Plaintiffs’ claims was $500,000.00. Clarendon asserts that the policy provides only $20,000.00 in UM coverage for Plaintiffs’ claims. In support of this argument, Clarendon points to the declarations page of its policy issued to Acadiana Dodge, Inc., which states that UM coverage is only $20,000.00 for each accident. In addition, Clarendon makes two arguments as to why the “DRIVE OTHER CAR” endorsement should not apply in this case. First, UClarendon argues that the “DRIVE OTHER CAR” endorsement clearly extends only to those autos not owned by Acadiana Dodge, Inc. Second, Clarendon argues that Plaintiffs are not named individuals to whom the broadened coverage under the “DRIVE OTHER CAR” endorsement should apply. Clarendon’s arguments assume that the insurance contract issued to Acadiana Dodge, Inc. is clear, unambiguous, and capable of only one reasonable interpretation.
In interpreting a contract, the trial judge’s duty is to determine the common intent of the parties. La.Civ.Code art. 2045. Where the words of a contract are clear, explicit, and lead to no absurd consequences, the trial judge may make no further interpretation in search of the parties’ intent. La.Civ.Code art. 2046. However, where an insurance contract’s provisions are ambiguous, the provisions should be construed against the insurer and in favor of coverage. Carrier v. Reliance Ins. Co., 99-2573 (La.4/11/00); 759 So.2d 37. Provisions seeking to narrow an insurer’s obligation must be strictly construed against the insurer. Id. Before this rule of construction applies; however, the provision must be found to be susceptible of two or more reasonable interpretations. Id.

Autos Not Owned

Clarendon’s first argument is that the “DRIVE OTHER CAR” endorsement provides coverage only “to the insured and others for the occasional and infrequent driving of cars other than those insured by the policy ...” See Benjamin v. Plains Ins. Co., 650 F.2d 98, 100 (5th Cir.1981), quoting 6C Appleman Insurance, Section 4455, p. 552. Clarendon argues that its policy clearly extends increased UM coverage only for autos not owned by Acadiana Dodge, Inc.
|KWe start our analysis of this argument by finding that the holding of Benjamin v. Plains Ins. Co., is inapplicable in the instant case. In Benjamin, Mr. Largin, an employee of Utter-Barks Ford, Inc., had been given a demonstrator car for the limited purpose of driving to and from work. Id. Although Mr. Largin knew of this limitation, Mr. Largin allowed his daughter to drive the demonstrator on a family errand. Id. Mr. Largin’s daughter was involved in an accident, and the other party sued, seeking recovery from Mr. Largin and his liability insurer, Plains Insurance Company (Plains). Id. Plains denied coverage based on the language of its policy. Id. The applicable provision read:
PERSONS INSURED: The following are insured under Part 1
(b) with respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation of (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission.
“Non owned automobile” means an automobile or trailer not owned by or furnished for the regular use of either the *167 named insured or any relative, other than a temporary substitute automobile.
Id. at 99-100.
The United States Fifth Circuit Court of Appeals held that Plain’s insurance policy did not cover the demonstrator which had been involved in the accident. Id. The fifth circuit noted that the purpose of the non-owned exception, as well as other exceptions dealing with replacement cars and rental cars is to provide a convenience to the insured to enable coverage in the case of occasional and sporadic use of such vehicles. Id. The fifth circuit concluded that interpreting this policy as providing coverage for a non-owned vehicle regularly used by an insured would cause the | (¡insurance company to have to insure vehicles for which the insured did not pay premiums. Id.
In the instant case, Clarendon attempts to make the same argument as that used by Plains; however, both the language of its policy and the factual situation involved are different. On the declarations page of the insurance policy issued to Acadiana Dodge, Inc., UM coverage is provided on covered autos with the symbol 22. Section I, covered autos, defines symbol 22 as:
22 = OWNED “AUTOS” ONLY. Only those “autos” you own (and for Liability Coverage any “trailers” you don’t own while attached to power units you own.). This includes those “autos” you acquire ownership of after the policy begins.
For those vehicles, the declarations page states that UM coverage is in the amount of $20,000 each accident.
In addition to the provision above regarding UM coverage, the policy contains a “DRIVE OTHER CAR” endorsement. This endorsement provides:
With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.
SCHEDULE
Name of Individual Coverage Limit Premium
SEE SCHEDULE II Liability.$1,000,000 INCL
PIP (Broadened).$ 0
Auto Medical Payments .... $ 5,000 INCL
Uninsured Motorists.$ 500,000 INCL
Underinsured Motorists .... INCL INCL
Physical Damage. Ded
Comprehensive.$ 1,000 INCL
Collision.$ 1,000 INCL
TOTAL . INCL
|7Note — When Uninsured Motorists is provided at limits higher than the basic limits required by a financial responsibility law, underinsured motorists is included [unless] otherwise noted. If underinsured motorists coverage is provided as a separate coverage, make appropriate entry in the Schedule above.
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.
MGA Copy Page 1 of 2
CA 99 10 12 93 05/20/98
*168 [[Image here]]
B. CHANGES IN LIABILITY COVERAGE
1. Any “auto” you don’t own, hire or borrow is a covered “auto” for LIABILITY COVERAGE while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:
a. Any “auto” owned by that individual or by any member of his or her household.
b. Any “auto” used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking “autos”.
2. The following is added to WHO IS AN INSURED:
Any individual named in the Schedule and his or her spouse, while a resident of the same household, are “insured” while using any covered “auto” described in paragraph B.l of this endorsement.
C. CHANGES IN AUTO MEDICAL PAYMENTS AND UNINSURED AND UNDERINSURED MOTORISTS COVERAGES
The following is added to WHO IS AN INSURED:
Any individual named in the Schedule and his or her “family members” are “insured” while “occupying” or while a pedestrian when being struck by any “auto” you don’t own except:
Any “auto” owned by that individual or by any “family member”.
Clarendon interprets these provisions as extending increased UM coverage [sonly to those autos not owned by Acadiana Dodge, Inc. Although Clarendon’s interpretation is a reasonable one, it is not the only reasonable interpretation available. The language of the endorsement may also be interpreted as enlarging the coverage provided to individuals listed in Schedule II while driving certain unowned autos. Therefore, the language of the endorsement is ambiguous. Such ambiguous language must be interpreted in favor of the insured and against the insurer. See Carrier v. Reliance Insurance Company, 99-2573 (La. 4/11/00), 759 So.2d 37.
After a review of the policy as a whole, and the provisions regarding UM coverage in particular, we are convinced that the applicable interpretation of the “DRIVE OTHER CAR” endorsement is the enlargement of the amount of UM coverage provided to those insureds listed in Schedule II and, in some cases, for those insureds while driving autos they do not own. We find this interpretation both reasonable and favorable to the insured. Clarendon’s argument favoring a restriction of the endorsement to unowned autos focuses only on the language, “auto you don’t own”, rather than considering the language of the endorsement as a whole. The endorsement clearly speaks in terms of adding to the class of insureds rather than limiting it. This is evidenced by the language, “The following is added to WHO IS AN INSURED.” Accordingly, we find Clarendon’s first argument without merit.

Schedule II

Clarendon’s second argument is that Plaintiffs are not “named individuals” under Schedule II to whom the broadened coverage of the “DRIVE OTHER CAR” endorsement applies. Clarendon argues that under Schedule II “named individuals” rather than “named insureds” should be considered in determining the increased ^coverage provided by the “DRIVE OTHER CAR” endorsement. Pursuant to this *169 argument, Clarendon asserts that rather than consider all of Schedule II, we should only consider page 5 of Schedule II in determining who is covered by the endorsement. This argument is without merit.
In its reasons for judgment, the trial court noted:
I think that when you refer to Schedule 2, it’s Schedule 2. At the very least it’s ambiguous. At the very best, which I think the reading is, you go to the named insureds. It says, “Go to Schedule 2.” I go to Schedule 2, and if they didn’t want you just to go to Schedule 2, then they should have not had all these people in Schedule 2.
... Acadiana Dodge is the first named insured under Schedule 2, and it seems to me that is what the UM coverage means, and that’s what this Court believes it to be and I’m going to grant the motion by the plaintiff and declare that UM coverage under Schedule 2 to Acadiana Dodge would be $500,000. I’ll sign a judgment in accordance therewith.
We agree with the trial judge in finding that Clarendon’s reference to Schedule II is ambiguous. The policy’s reference to “Schedule II” could reasonably mean all of “Schedule II” or only page 5 of Schedule II. A review of Schedule II shows that it consists of six pages. Of importance to our analysis is page 1 and page 5. Page 1 states:
1. NAMED INSUREDS
No. Named Insured Business Type
1 ACADIANA DODGE, INC. CORPORATION
Page 5 states:
6. DRIVE OTHER CARS — NAMED INDIVIDUALS
No. Name Relationship
1 M7M ADRIAN VEGA OWNER
2 MM BENNETT BERNARD SECRETARY/ TREASURER
Jas- • • •
While Clarendon argues that the endorsement’s reference to Schedule II means Schedule II page 5 because that page specifically lists “named individuals” for the purposes of the “DRIVE OTHER CAR” endorsement, we find that “See Schedule II” must be interpreted to include all of Schedule II rather than simply page 5. A review of the entire policy shows that, in other parts of the policy, when Clarendon sought to refer to a particular page of a schedule, it did so. For example, under the “LOSS PAYABLE PROVISIONS” endorsement, the schedule reads as follows:
SCHEDULE
Bldg. Description Loss Payee
No. of Property (Name & Address)
1 SEE SCHEDULE SEE SCHEDULE
II PAGE 2 II PAGE 4[1]
[[Image here]]
Because the term Schedule II is ambiguous and must be interpreted in favor of the insured, we find that the term Schedule II refers to all of Schedule II. Under such an interpretation, Acadiana Dodge, Inc. was a named insured for purposes of the “DRIVE OTHER CAR” endorsement. Therefore, we find Clarendon’s second argument without merit.
NEW POLICY
On appeal, Plaintiffs argue that Clarendon’s failure to obtain a new UM rejection after the policy was substantially modified on May 20, 1998, violated the provisions of La.R.S. 22:1406D(l)(a)(i), therefore, having the legal effect of raising the UM limits under the Clarendon policy to the same amount as its policy limits, h 41,000,000.00. Before we may reach the substance of this assignment, we must determine whether we may address it absent *170 the filing of an answer on the part of the Plaintiffs. Generally, an answer must be filed if a party seeks to have “the judgment modified, revised, or reversed in part or unless he demands damages against the appellant.” La.Code Civ.P. art. 2133. However, under certain circumstances this court may, in “the interest of justice” review issues which were not properly brought on appeal. Uniform Rules, Courts of Appeal, Rule 1-3; See, e.g., Maurello v. Department of Health and Human Resources, 510 So.2d 458 (La.App. 1 Cir.); writ denied, 514 So.2d 460 (La.1987); State, D.O.T.D v. C. Schexnayder, Inc., 485 So.2d 939 (La.App. 1 Cir.1986). Furthermore, “[an] appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” La.Code Civ.P. art. 2164.
Generally, an appellate court will only hear those issues appealed or addressed in an answer to an appeal. This promotes judicial efficiency and is based on the understanding that parties will act in their own best interest in determining whether to appeal or answer an.appeal. Although Plaintiffs did not file an answer in the instant case asserting the trial court erred in finding that the Clarendon policy’s UM coverage was only $500,000.00, rather than $1,000,000.00, this issue is clearly within the scope of review allowed the court. In the instant case, Clarendon has asked us to review and determine the proper UM limits to apply to the Plaintiffs’ claim. Therefore, we must consider the entirety of the evidence and argument indicating what coverage limits are applicable in reviewing whether the trial court erred in its interpretation of the Clarendon policy. Accordingly, we will now turn to the merits 11gof the assignment.
In this assignment, Plaintiffs argue that Clarendon’s failure to obtain a new UM rejection raised the UM limits under the Clarendon policy to the same amount as its policy limits, $1,000,000.00. In their brief, Plaintiffs point to the fact that the Clarendon policy at issue contained a UM rejection/selection of lower limits signed on April 1, 1998. They argue, however, that the “DRIVE OTHER CAR” endorsement to the policy, which increased the UM limits to $500,000.00 was made bn May 20, 1998. Accordingly, they feel that an additional rejection of UM coverage was needed after this addition of the endorsement to the policy.
In support of their argument that Acadi-ana Dodge Inc.’s failure to issue a new UM rejection/selection increased the UM limits available under the policy to $1,000,000, the Plaintiffs cite Perkins v. Guaranty Nat. Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, writ denied, 96-0759 (La.5/31/96); 673 So.2d 1033. In Perkins, we held that a new rejection of UM coverage was required when a vehicle was added to the commercial automobile insurance policy at issue. Id. In making that determination we noted that the insured did not substitute vehicles regularly, and the policy did not contain a provision stating that the decision to accept or reject UM coverage would apply to any vehicle added under the policy unless a change was requested in writing. Id. Under those circumstances, the court concluded that the addition of a vehicle to a commercial policy was similar to an individual insurance policy, which required a new rejection of uninsured motorist coverage when a new vehicle was added. Id.
The Plaintiffs also cite Savant v. American Cent. Ins. Co., 98-542 (La.App. 3 Cir. 12/9/98); 725 So.2d 43, writ denied, 99-0060 (La.3/12/99); 739 So.2d 202. In Savant, the issue presented to the court was whether the addition of named insureds to the policy had the effect of creating a new policy such that the execution of *171 a new UM rejection form was required. Id. In evaluating this issue, the court examined prior case law including the first circuit cases, Wilkinson v. Louisiana Indent, 96-0447 (La.App. 1 Cir. 11/8/96); 682 So.2d 1296, writ denied, 96-2920 (La.6/13/97); 695 So.2d 964 and Dempsey v. Automotive Gas. Ins., 95-2108 (La.App. 1 Cir. 6/28/96); 680 So.2d 675.
In Wilkinson, the first circuit held that if the addition of an insured does not have the effect of increasing the policy’s coverage, there is no new policy which would require a new UM rejection form. Wilkinson, 682 So.2d 1296. In that case, a spouse had been added as a named insured after the issuance of the policy; however, the first circuit found that the policy had covered the spouse before this addition since the definition of insured in the policy included a spouse. Id.
In Dempsey, the first circuit reached a different result. Dempsey, 680 So.2d 675. In that instance, the first circuit found that the endorsement to an automobile insurance policy that added another person as an insured created a new policy. Id. The first circuit concluded that the addition of an insured, without any change in the bodily injury limits, increased the policy’s coverage such that the policy was not a substitute policy, but a new policy. Id.
In reviewing these two cases in Savant, our court distinguished between Wilkinson and Dempsey noting that the policy in Dempsey did not already provide coverage to the insured added. Savant, 725 So.2d 43. This court found the situation |14in Savant to be similar to that of Dempsey. Id. As a result, the court held that when the businesses were added as additional insureds, the policy’s coverage increased, and a new policy was created. Id. As a result, our court concluded that because no new UM form was executed upon the issuance of the new policy, the insurer’s policy was deemed to provide UM coverage equal to the limit of bodily injury liability coverage. Id.
Finally, Troha v. State Farm Ins. Co., 606 So.2d 89 (La.App. 3 Cir.1992), is most instructive. In Troha, this court has found that an endorsement, which was issued two days after the issuance of the original policy for which a waiver of uninsured motorist coverage had been signed, constituted a new policy. Id. Because no new waiver was signed at the time the endorsement became effective, this court concluded that the plaintiff in that instance was covered by UM coverage equal to the liability limits of the policy. Id.
The goal of uninsured motorist legislation is the promotion of a full recovery for innocent automobile accident victims by making uninsured motorist coverage available for their benefit. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The UM statute must be liberally construed so that the statutory exceptions to the coverage requirement are to be interpreted strictly. Id. Exclusions from coverage under an insurance policy must be clear and unmistakable. Id. The insurer bears the burden of proving that insureds named within the policy rejected in writing UM coverage equal to bodily inju-y limits or selected lower limits. Id.
After a review of the entire Clarendon policy and of the record as a whole, we find that the trial court erred in failing to adequately consider Plaintiffs’ argument. |1sAt trial, the following discussion took place regarding this argument:
I have another problem with the exclusion, and that’s the endorsement to change the policy, at least to select lower UM limL_. That was signed April 1st, 1998 when the policy was first taken out. And this broadened coverage for named individuals wasn’t enacted until May *172 20th, '98. So arguably a second UM rejection should have been signed specifying that we’re now going to have a change in the UM coverage for different individuals. So there are really two things going on here.
MR. JAMISON: I’ve been down that road with these dealerships, Judge, and it wasn’t briefed because it wasn’t raised. They change all types of things in dealership policies, and I think the cases are pretty clear that you don’t have to come in every day with a new rejection.
THE COURT: No. And I don’t think it’s material. It’s a greater coverage than it would be anyway, I think. If I’m hearing that right, it was 20 before and it increased. So the argument that you needed to sign a UM waiver when, in fact, you’re increasing coverage — you know, Mr. Jamison’s theory — either way you’re still increasing coverage because you got 20 in April and now you have 500 in May for under his theory the named insureds—
MR. ST. PE’: Well, my argument would be that you’d go back to the liability limits of the policy which are a million so that if there’s no valid UM rejection, the UM would be the same limits as the liability.
THE COURT: I don’t buy that argument. ...
Unfortunately, while argument is present in the record, suggesting that the endorsement was added to the policy on May 20, 1998, it is unclear from the face of the policy whether that is the case. At the top of the endorsement in large print the document states “EFFECTIVE DATE: 04/01/98”. Immediately under that notation, the endorsement declares that, “This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.” While we note that the date, written as “5/20/98” in smaller print, appears at the bottom of the | ^endorsement page, it is unclear whether that date is the effective date of the endorsement or simply the date on which the document was printed.
As the trial judge failed to give proper consideration to Plaintiffs’ argument that the absence of a rejection/selection of UM coverage regarding the “DRIVE OTHER CAR” endorsement may have effectively increased the UM coverage available to the Plaintiffs to $1,000,000.00, we must remand. We remand because the record is unclear as to whether the endorsement was effective on the same date as the policy, or whether the endorsement was added to the policy as Plaintiffs suggested on May 20, 1998. If the trial court finds that the endorsement was added to the policy after the insurance policy became effective, then the higher limit of $1,000,000.00 would be applicable.

DECREE

Based on the foregoing discussion, we reverse the decision of the trial court, and we remand for further proceedings consistent with this opinion. All costs are assessed against Clarendon.
REVERSED AND REMANDED.
AMY, J., dissents and assigns reasons.

. A portion of the quoted line has been omitted which is inapplicable to the instant case.