606 So.2d 89 (1992)
Enola TROHA, Plaintiff-Appellant,
v.
STATE FARM INSURANCE COMPANY, et al., Defendants-Appellees.
No. 91-446.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
*90 McGee & Caswell, A. Gerard Caswell, Eunice, for plaintiff-appellant.
Dauzat, Falgoust, Jeigh L. Stipe, Opelousas, for defendants-appellees.
Before GUIDRY and LABORDE, JJ., and SALOOM[1], J. Pro Tem
LABORDE, Judge.
In this case, plaintiff was involved in an automobile accident with John C. Shaw. Plaintiff filed suit against John C. Shaw, his liability insurer, State Farm Insurance Company, and Champion Insurance Company as plaintiff's uninsured motorist carrier. Plaintiff settled with State Farm but pursued the claim for UM coverage with Champion Insurance Company. The trial court found the endorsement to plaintiff's original policy was a renewal and thus, no additional waiver of uninsured motorist coverage was necessary dismissing plaintiff's suit. We reverse the decision of the trial court finding the endorsement to be a new contract necessitating a new rejection for uninsured motorist coverage.

FACTS
On May 29, 1988, plaintiff was involved in an automobile accident. After the plaintiff filed suit, State Farm Insurance Company (State Farm) paid plaintiff its liability policy limits of $10,000.00 and the parties stipulated that the plaintiff was free from any fault and plaintiff's damages would have been at least $20,000.00. Champion Insurance Company (Champion), plaintiff's uninsured/underinsured motorist carrier (UM), became insolvent during these proceedings and Louisiana Insurance Guaranty Association (LIGA) was substituted in their place. Plaintiff and LIGA further stipulated to all of the facts. Champion issued a non-ownership policy in the name of Joseph C. Troha which had an effective policy period of 3/22/88 to 9/22/88 with liability limits of $10,000.00/$20,000.00 and that said policy named both Joseph C. Troha and Enola Troha as insureds. At the time of purchasing this policy, Joseph Troha signed a waiver of uninsured motorist coverage (UM).
On March 24, 1988, Joseph Troha contacted Champion to inform them he had purchased a 1982 Chevrolet Caprice automobile and wished to have coverage for this automobile. Champion issued an endorsement adding the 1982 Chevrolet Caprice as well as coverage for comprehensive and collision damage. There was no new UM waiver form signed at this time. The plaintiff sought to recover her UM policy limits of $10,000.00 from LIGA in order that she would be fully compensated for her stipulated damages of $20,000.
The trial court held that plaintiff's endorsement was a renewal of the original policy and thus the original rejection of UM coverage by the plaintiff was still in force. Plaintiff's claim against LIGA was dismissed and this appeal was perfected.

UNINSURED/UNDERINSURED REJECTION LAW
The general rule regarding rejection of uninsured motorist coverage is that the initial rejection of UM coverage by an insured is good for renewal, reinstatement or substitute policies. See, Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241 (La.App. 3d Cir.1991); La.R.S. 22:1406, subd. D. Therefore, our next discussion *91 is whether the endorsement involved in this case is a renewal, reinstatement or substitute policy.
To determine what a renewal policy is, we need only look at the statute defining it. La.R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace "at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs before the end of the first policy period. A renewal contemplates uninterrupted coverage. Bryant, supra. The present endorsement was issued two days after the issuance of the original policy. Thus, the policy had certainly not reached the end of the policy period and therefore, there is no way the endorsement could be a renewal. We find the trial court erred in designating the endorsement as a "renewal" policy.
A reinstated policy means to restore the insured to all the benefits accruing under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured is no longer covered by insurance. Bryant, supra. Again, this is not what occurred in the present case. There was no time period in which plaintiff was not covered. The policy period began on 3/22/88 and was scheduled to end on 9/22/88. The endorsement is not a reinstatement.
The last category is a substitute policy. There is no statutory definition and very little jurisprudence concerning substitute policies. The general definition for substitute is "One who or that which stands in the place of another". Blacks Law Dictionary 1281 (5th ed. 1979). We do not find that the endorsement took the place of the original policy. There was no substitution of insureds or vehicles. The endorsement was not a substitute policy.
We find that the endorsement providing insurance coverage for the 1982 Chevrolet Caprice was a new contract. Plaintiff originally purchased a non-ownership policy which consisted of liability limits only because plaintiff did not own a car at that time. This policy was purchased to provide insurance coverage when plaintiff would drive vehicles belonging to other persons. When plaintiff purchased a car, the non-ownership policy had to become an ownership policy. Plaintiff then wanted comprehensive and collision insurance to cover the vehicle just purchased. These changes and the plaintiff's change in circumstances is sufficient to set forth an entirely new contract.
When current policies are viewed as entirely new contracts, the UM limits would equal the liability coverage unless the insured signed an additional UM waiver or reduction form. See, Sentilles v. State Farm Mutual Automobile Insurance Company, 443 So.2d 723 (La.App. 4th Cir. 1983), writ denied, 445 So.2d 437 (La.1984): Courville v. State Farm Mutual Automobile Insurance Company, 393 So.2d 703 (La.1980). Thus, the UM coverage available to plaintiff is equal to the liability limits in the Champion policy.
The object of the UM statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is inadequately insured. Uhrich v. National Fire Ins. Co., 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (La. 1991). In order to implement this objective of providing reparation for those injured through no fault of their own, the Louisiana Supreme Court has held that the UM statute is to be liberally construed. Uhrich, supra; Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In the present case, the scenario concerning the endorsement did not fall into the category of a renewal, reinstatement, or a substitute. Since these categories are inadequate to encompass the situation involved here, and given the circumstances surrounding the endorsement, we find the endorsement to be a new contract. Therefore, since no new UM waiver form was signed, plaintiff has UM coverage equal to the liability limits of $10,000.00/$20,000.00. As the parties have stipulated that plaintiff *92 was not at fault, that her damages are $20,000.00, and that plaintiff has received $10,000.00 policy limits from State Farm, we find LIGA to be liable to plaintiff for the UM policy limits in the amount of $10,000.00.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff, Enola Troha, against LIGA in the amount of $10,000.00. All costs of this appeal are assessed against defendant, LIGA.
REVERSED AND RENDERED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, Judge, concurring.
I agree that under the particular circumstances of this case a new contract of insurance was effected between plaintiff and Champion on March 24, 1988, although confected by endorsement to the policy issued on March 22, 1988. Accordingly, considering the liberality of construction accorded the UM statute, I further agree that a waiver of UM coverage was required with respect to such new policy in default of which the UM coverage available to plaintiff is equal to the liability limits in the Champion policy.
In my view, the instant case is clearly distinguishable from Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir. 1986), with which I agree; and, Guilbeau v. Shelter Mutual Insurance Company, 549 So.2d 1250 (La.App. 3rd Cir.1989); Gaar v. Sowards, 573 So.2d 499 (La.App. 1st Cir. 1990), writ denied, 569 So.2d 990 (La.1990); and, Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La.App. 3rd Cir.1992), with which I disagree. For these reasons, I respectfully concur.
NOTES
[1] Judge Saloom participated in this decision as Judge Pro Tempore.