633 So.2d 959 (1994)
Katherine Louque, Wife of/and Charles J. FAUCHEAUX
v.
BOSTON OLD COLONY INSURANCE COMPANY, Champion Insurance Company and Gizel Marie Gray.
No. 93-CA-384.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1994.
Rehearing Denied April 18, 1994.
*961 Steven F. Griffith, Destrehan, for plaintiffs-appellants.
Edward A. Rodrigue, Terry B. Deffes, New Orleans, for defendants-appellees.
Before KLIEBERT, C.J., and BOWES, DUFRESNE, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This is an appeal of a trial court decision, granting summary judgment in favor of a defendant-insurer and dismissing them from the lawsuit. The issue on appeal is whether uninsured/underinsured motorist (UM) coverage was validly rejected on a policy mistakenly issued for $350,000 and later amended by endorsement to reflect the required $500,000, when the accident from which the UM coverage relief is sought occurred subsequent to the endorsement.

FACTS
In June of 1986, the St. Charles Parish Sheriff's office sought competitive bids from insurance agencies for liability coverage of their vehicles. The sheriff's office was required by law to carry a minimum $500,000 liability policy. The Rodrigue Agency submitted a quote for a policy issued through the Louisiana Automobile Insurance Plan (LAIP), the state's assigned risk pool. The sheriff's office found the quote acceptable, and on June 27, 1986, Chief Hebert LeRay[1] applied for a $500,000 liability policy through the Rodrigue Agency. Chief LeRay also executed a written rejection of UM coverage on the policy application.
The application was forwarded to the LAIP, where it was assigned to Commercial Union Insurance Company. At that time, the maximum liability coverage under the LAIP for commercial coverage was $350,000. In order to write a policy with higher limits, Commercial Union needed documentation that the applicant was required by law to carry higher coverage. Although the sheriff's office application was for the required $500,000, Commercial Union, without requesting the necessary documentation or informing the sheriff's office of the discrepancy, instead wrote the policy for $350,000. The policy was effective July 1, 1986 through July 1, 1987.
Upon receiving a copy of the policy, the sheriff's office notified the Rodrigue Agency, which in turn notified Commercial Union, that the policy was inadequate and written in error. After receiving the requisite documentation, in March of 1987, Commercial Union issued an endorsement, effective March 1, 1987, amending the limits to $500,000. Commercial Union also billed the sheriff's office for the difference of the four month (March-June) increase in the policy limits. The $500,000 policy was renewed for another one year period on July 1, 1987.
On December 2, 1987, plaintiff, Charles J. Faucheux and his minor son, Chad, while traveling along La. 48 in a vehicle owned by the St. Charles Parish Sheriff's office, were involved in an accident with Gezel Marie Gray. Plaintiff timely filed suit in the 29th Judicial District Court for the Parish of St. Charles against Ms. Gray, her liability insurer, Champion Insurance Company[2], and plaintiff's UM motorist insurer, Boston Old Colony Insurance Company. Plaintiff later amended his petition to include Commercial Union as UM carrier of the sheriff's office vehicle.
Plaintiff settled with Ms. Gray and her insurer (who were dismissed on April 24, *962 1991) for the policy limits of $10,000. Boston Old Colony (holding a UM policy in favor of plaintiff for $300,000) and Commercial Union remained as defendants.
On November 13, 1991, Commercial Union filed a motion for Summary Judgment, arguing that Chief LeRay's rejection of UM coverage on the June 26, 1986 application was valid for the subsequent endorsement which increased the policy limits to $500,000, and that Commercial Union was entitled to judgment as a matter of law. On March 23, 1993, the trial court granted Commercial Union's motion, holding that no additional rejections were required by the endorsement, and Commercial Union was dismissed from the lawsuit.
On appeal, plaintiff asserts two assignments of error: 1) that the trial court erred when it ruled that a non-retroactive endorsement issued March 1, 1987, increasing liability limits to $500,000 did not require a new waiver; and 2) that the trial court erred when it retroactively applied Act 203 of the 1988 Louisiana Legislature (effective September 9, 1988) to rule that the reinstatement letter of September 3, 1987 did not require a new waiver.[3]
Because we find that the trial court erred when it held that no additional UM rejection was required after the March 1987 endorsement, we need only address plaintiff's first assignment of error.

SUMMARY JUDGMENT
Prior to deciding any substantive issue on an appeal taken as a result of a summary judgment, we must first analyze the applicable law on summary judgments.
Pursuant to La.Code Civ.Proc. art. 966(B), a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. By Act No. 71 of the 1992 Legislative Session, La.Code Civ.Proc. art. 966(D) was enacted to specifically allow a summary judgment to be rendered on the issue of insurance coverage alone, as took place in the matter before us. However, the same Act also amended La. Code Civ.Proc. art. 1915(A)(3) to provide that a judgment rendered pursuant to art. 966(D) is not a final judgment.
Act No. 71 took effect on August 21, 1992. The summary judgment appealed from was granted on March 23, 1993. La.Code Civ. Proc. art. 2083(A) states that:
[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814.
Pursuant to art. 1915(A)(3), the March 23, 1993 summary judgment is not a final judgment. However, we find that the dismissal of Commercial Union through summary judgment is an interlocutory judgment that, without appellate review, may cause irreparable injury to plaintiff/appellant. This appeal, therefore, is properly before us.

LAW
In Louisiana, uninsured motorist coverage is provided for by LSA-R.S. 22:1406. During the period relevant to the instant case (1986-1987), 22:1406 provided in pertinent part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions *963 filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.[4]
R.S. 22:1406 embodies a strong public policy and is to be liberally construed. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Id. (citations omitted).
Every automobile liability policy delivered or issued for delivery in this state is impliedly amended to include UM coverage unless the coverage is validly rejected. Giroir v. Theriot, 513 So.2d 1166, 1167 (La.1987). UM coverage may be specifically rejected by the insured in the insurance contract, pursuant to the statutory guidelines. However, any exception to the mandatory UM coverage is to be strictly construed. Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991). Therefore, unless the insured's expression of desire to waive uninsured motorist coverage, however clear, meets the formal requirements of law, the expression does not constitute a valid rejection. Jordan v. Honea, 407 So.2d 503, 506 (La.App. 1st Cir.1981), writ denied 409 So.2d 654, 409 So.2d 660 (La. 1982).

ANALYSIS
In the instant matter, Chief LeRay's written rejection of UM coverage on the June 27, 1986 policy application met the formal requirements of law. See generally Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), rehearing denied (Jan. 28, 1993). From the applicable language of R.S. 22:1406(D)(1)(a) as stated above, the general rule regarding rejection of UM coverage is that the initial valid rejection by an insured is also valid for renewal or substitute policies[5]. We must therefore determine whether the $500,000 policy is a renewal or substitute policy.
A renewal policy is defined by LSA-R.S. 22:636.1(A)(5) as one issued and delivered to replace, at the end of the policy period, a policy previously issued and delivered by the same insurer. A renewal can therefore only occur at the end of the policy period it renews; it is not a renewal if the second issuance occurs before the end of the first policy period. Troha v. State Farm Ins. Co., 606 So.2d 89, 91 (La.App. 3rd Cir.1992). In the instant case, since the March 1987 endorsement which increased the policy limits was issued prior to the end of the policy period (July 1, 1987), it is clearly not a renewal policy.
Nor do we find that this is a substitute policy. While there is no statutory definition and very little jurisprudence concerning substitute policies, there are two possible interpretations of what a substitute policy for purposes of R.S. 22:1406(D)(1)(a) entails. It is possible to have a substitution of insurers and/or vehicles. 13A Appleman *964 Insurance Law and Practice, Secs. 7741 and 4293-95, and Troha, supra. However, no such substitutions took place in the matter before us.[6]
The second interpretation is that if there is coverage and an agreement is made for a different coverage, there is a substitution of policies. 18 Couch on Insurance 2d, Secs. 69.1-69.3, Revival and Reinstatement. In the matter before us, there was different coverage: the endorsement raised the policy limits from $350,000 to $500,000. However, there was no agreement made for different coverage. From the outset, the sheriff's office had applied for, and for several months believed they had received, a $500,000 policy. Through error, the sheriff's office was issued a $350,000 policy instead. At the time the endorsement which corrected the error was issued, the sheriff's office had made no agreement for different coverage.
Other circuits reviewing this issue have held that an increase in liability coverage has the effect of a new policy and if a separate UM election/rejection is not executed at that time, the UM coverage increases in an amount equal to the face limits of liability. Gaar v. Sowards, 573 So.2d 499 (La.App. 1st Cir.1990), writ denied 569 So.2d 990 (La.1990); Guilbeau v. Shelter Mutual Ins. Co., 549 So.2d 1250 (La.App. 3rd Cir. 1989); and Ruiz v. Lewis, 579 So.2d 1203 (La.App. 4th Cir.1991), writ denied, 586 So.2d 562 (La.1991). While Gaar and Guilbeau involved initial elections of UM coverage which required separate UM elections/rejections when liability limits were subsequently increased, Ruiz involved an initial rejection of UM coverage.
In Ruiz, the plaintiff, while driving a vehicle owned by his employer, was injured in an automobile accident. Plaintiff sued the other driver, her insurer and his employer's alleged UM carrier. The trial court dismissed the UM carrier through summary judgment, finding that a valid rejection of UM coverage had been executed by an authorized agent of plaintiff's employer. The court of appeal reversed, holding that an endorsement, increasing the insured's liability coverage also increased the amount of UM coverage, "and the insured must be given the opportunity to specifically waive or select lower limits of UM coverage," notwithstanding that the insured executed an initial valid UM rejection. Ruiz, supra at 1207.
We follow the reasoning in Ruiz, a case similar to the one before us today. Although Chief LeRay, as authorized agent for the sheriff's office, executed a valid written UM coverage rejection on the the June 27, 1986 application for insurance, the rejection was only valid as to the $350,000 policy issued as a result of that application. When the March 1987 endorsement was issued, increasing the policy to $500,000, a new contract was createdthe initial UM rejection did not meet the formal requirements of law as to that new contract. Therefore, since a new UM coverage election/rejection form was not executed for the new $500,000 policy, pursuant to R.S. 22:1406(D)(1)(a), UM coverage was provided in an amount not less than the limits of bodily injury liability$500,000.
Recently, in several decisions, the Third Circuit addressed the question of whether additional UM waivers or selection of lower UM limits were required when alterations to existing liability policies were made. In Guilbeau, supra, the court held that where there is an increase in bodily injury limits of the insurance policy, an additional written rejection or selection of lower limits is required. This reasoning has been followed in cases where, as in Ruiz, supra, there were initial valid rejections of UM coverage. Troha, supra; Thibodeaux v. Champion Ins. Co., 614 So.2d 232 (La.App. 3rd Cir.1993); Donaghey v. Cumis Ins. Soc., 600 So.2d 829 (La. App. 3rd Cir.1992); and Bryant v. Viking Ins. Co. of Wisconsin, 579 So.2d 1241 (La. App. 3rd Cir.1991). Thibodeaux and Donaghey held that the addition of a car to the existing policy increases the policy's coverage, thereby requiring a separate rejection of UM insurance. Troha held that an endorsement, adding a car and comprehensive and collision coverage to the policy resulted in a *965 new contract, requiring a new UM coverage rejection.
In the matter before us, the trial court stated in its written reasons for judgment that once the endorsement was issued, a new rejection of UM coverage was not required since the liability limits in the endorsement were the same as were requested when the UM rejection was made. While it is factually correct that from the outset, the sheriff's office intended to reject UM coverage on a $500,000 policy, "the law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment." Roger, supra at 1131-32, citing Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2nd Cir.1986). Although LSA-R.S. 22:1406(D)(1)(a) does not exclude policies other than renewals and substitutions (and now reinstatements) from not requiring subsequent UM coverage rejections, we are bound by the strong public policy and wealth of jurisprudence, mandating 22:1406(D)(1)(a) be liberally construed to carry out its objective of providing reparation for those injured through no fault of their own. We therefore find that Chief LeRay's initial UM coverage rejection did not meet the formal requirements of law for the endorsement which increased the liability policy limits to $500,000, and that Commercial Union held a $500,000 UM policy in favor of the St. Charles Parish Sheriff's office vehicles during the December 2, 1987 accident.
Therefore, for the foregoing reasons, we reverse the judgment of the trial court which granted summary judgment in favor of Commercial Union Insurance Company and dismissed them from the lawsuit, and we remand this matter for additional proceedings with respect to liability and damages. All costs of this appeal are assessed against the appellee.
REVERSED AND REMANDED.
KLIEBERT, C.J., concurring in part.
BOWES, J., dissents for the reasons assigned by CANNELLA, J.
CANNELLA, J., dissents with reasons.
KLIEBERT, Chief Judge, concurring in part.
I agree, the judgment of the trial court dated March 23, 1993 granting summary judgment to the defendant insurance company and their dismissal from the action should be set aside; but not for the reasons stated in the opinion prepared by Judge Gothard.
In my view, to grant the motions filed by the plaintiffs involves substantially more than a ruling on the insurance coverage, as that term is generally used.[1]
It is rarely appropriate to use summary judgment for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Bertrand v. Lala, 600 So.2d 788 (La.App. 5th Cir.1992). This is particularly so where, as here, the underlying policy was issued through the assigned risk pool.
For that reason I would remand the case for a trial on the merits on all issues, including liability, damages and insurance benefits, because the issues raised by the motions are not appropriate to a summary disposition.
BOWES, Judge, dissenting.
CANNELLA, Judge, dissenting with reasons.
With all due respect, I disagree with the majority that the insurance policy was not a renewal or substitution policy, thus requiring a new waiver of uninsured motorist coverage. The sheriff made application for a $500,000 policy in which he rejected the uninsured motorist coverage. Commercial Union sent a $350,000 policy because that was its limits under LAIP. Thus, the $350,000 policy was issued in error. When notified of the error and after informing the company that the sheriff was required to carry $500,000 in insurance, Commercial Union informed the sheriff that it needed documentation of that fact. When the sheriff complied, the $500,000 policy was issued. These events reflect *966 that the policy was not a new policy, but the correction of an error, in keeping with the intent and needs of the sheriff. Furthermore, although the original policy was canceled in June of 1987 for non-payment of premiums, that was cured by the payment made after the sheriff was notified, as evidenced by the letter of reinstatement dated September 3, 1987 which specifically stated there was no lapse in coverage. The meeting of the minds of Commercial Union and the sheriff only occurred in the application, approval and issuance of the $500,000 policy, in which there was a rejection of uninsured motorist coverage.
Accordingly, I would affirm the summary judgment granted by the trial judge.
NOTES
[1] It was apparently agreed by all parties that Chief LeRay was an agent of the St. Charles Parish Sheriff's office, authorized to contract with others for insurance on the sheriff's office's behalf.
[2] The Louisiana Insurance Guaranty Association (LIGA) was later substituted as the proper party after Champion Insurance Company went into liquidation.
[3] There was also a question of whether Commercial Union's August 17, 1987 notice of cancellation, which was revoked shortly after issuance when the premium payment was received, created a two day lapse in the policy, thereby making it a reinstatement policy. Reinstatement policies were exempted from requiring a new UM coverage waiver by Act 203.
[4] Since 1986, R.S. 22:1406(D) has been amended several times. While the body of subsection (D) has been expanded and clarified, the substance of the portion of the law pertinent to the case before us has remained basically the same.
[5] R.S. 22:1406(D)(1)(a) has since been amended to include, inter alia, that reinstatement policies also do not require subsequent UM rejections.
[6] Additionally, 22:1406(D)(1)(a) cannot contemplate a substitution of insurers because, by its language, the substitute policy has to be issued by the same insurer.
[1] As generally used, to me, the term means a determination of whether under the provisions of an insurance policy, written and issued by the insurance carrier, provides insurance benefits under a given set of facts to the insured or a third party claiming through the insured.