680 So.2d 675 (1996)
Nancy Waller, Wife of/and Patrick DEMPSEY
v.
AUTOMOTIVE CASUALTY INSURANCE, Allstate Insurance Company, Denise Wagner and Don Hillidge.
No. 95 CW 2108.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Rehearing Denied October 9, 1996.
*676 George H. Troxell, III, New Orleans, for Plaintiffs/Appellants, Nancy Waller Dempsey, wife of/and Patrick Dempsey.
James S. Rees, III, Covington, for Defendant/Appellee, Allstate Insurance Company.
Before CARTER, PITCHER and KLINE[1], JJ.
CARTER, Judge.
This issue presented in this writ application is whether the addition of an insured driver to a policy falls outside the scope of a renewal, reinstatement, or substitute insurance policy, rendering the previous uninsured/underinsured motorist (UM) selection/rejection form invalid and requiring the execution of a new UM selection/rejection form.

FACTS
On November 30, 1988, Patrick and Nancy Waller Dempsey obtained a policy of automobile liability insurance, policy number 0 85 743095, from Allstate Insurance Company (Allstate). The liability limits under the Allstate policy were $50,000/$100,000. On that same day, Nancy executed a selection/rejection form regarding UM coverage. On the selection/rejection form, Nancy selected UM limits of $10,000/$20,000, which were lower than the liability limits provided for in the Allstate policy.
Thereafter, two changes were made to the Allstate policy. Nicole Marino was added as an additional driver on the policy, effective June 27, 1991. As a result of the addition of Nicole Marino, the insurance premium for the six-month policy period was increased. Thereafter, on August 13, 1991, a 1991 Nissan was substituted for a 1986 Nissan. No other changes to the policy were made, nor was a new UM selection/rejection form executed by the Dempseys.
On April 8, 1992, plaintiff, Patrick Dempsey, was operating a 1987 Mazda automobile owned by his wife, Nancy. At the time, Nancy was a passenger in the automobile. The Dempsey vehicle was travelling east on La. Highway 190 in St. Tammany Parish, Louisiana, and was following a vehicle owned and operated by Percy Broyard.
Broyard brought his vehicle to a stop, and Dempsey stopped his vehicle behind the Broyard vehicle. Thereafter, the Dempsey vehicle was struck from the rear by a vehicle owned by Denise Wagner and operated by Don Hillidge. As a result of the collision, Patrick and Nancy Dempsey sustained injuries.
*677 On June 1, 1992, the Dempseys filed the instant action for damages against Don Hillidge and Denise Wagner, the operator and owner, respectively, of the Wagner vehicle; Automotive Casualty Insurance Company (ACIC), the liability insurer of the Wagner vehicle; and Allstate Insurance Company (Allstate), plaintiffs' automobile liability and UM insurer.
On July 2, 1992, ACIC filed an answer on its behalf and on behalf of Hillidge and Wagner. The answer generally denied the allegations contained in plaintiffs' petition. Allstate also answered plaintiffs' petition, generally denying the allegations and alleging that Patrick Dempsey was at fault in causing the accident. In its answer, Allstate asserted a cross-claim against Hillidge, Wagner, and ACIC, seeking indemnity and/or contribution.
During the pendency of the proceedings, ACIC was placed into liquidation. Thereafter, by supplemental and amending petition, plaintiffs added, as a defendant, the Louisiana Insurance Guaranty Association (LIGA).
On March 29, 1995, plaintiffs filed a motion for partial summary judgment on the issue of coverage under the Allstate UM policy, contending that there were no genuine issues of material fact in dispute and that they were entitled to judgment as a matter of law. Plaintiffs urged that the addition of Nicole Marino as an insured under the Allstate policy was a change in the policy, which required the execution of a new UM selection/rejection form. Plaintiffs reasoned that, because the Dempseys had not executed a new UM selection/rejection form after the addition of Nicole Marino to the policy, the UM limits under the Allstate policy were equal to the bodily injury liability limits of $50,000/$100,000.
In opposition to plaintiffs' motion for summary judgment, Allstate argued that the addition of an additional insured does not require the execution of a new UM selection/rejection form and that the initial selection/rejection of UM coverage was valid. As a result, Allstate reasoned that the UM limits under its policy were $10,000/$20,000.
On September 11, 1995, a hearing was held on the motion for summary judgment. On September 14, 1995, the trial court signed the judgment, denying plaintiffs' motion for partial summary judgment.[2] The judgment provided as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the plaintiffs' motion for partial summary judgment on the issue of coverage against Allstate Insurance Company be and the same is hereby denied and that Allstate's policy will not be reformed to increase its uninsured motorist coverage from $10,000.00 to $50,000.00 but said policy will remain in effect with a limit of $10,000.00 per person and $20,000.00 per occurrence for uninsured motorist coverage.
From this adverse judgment, plaintiffs filed an application for supervisory writs with this court and a motion and order for devolutive appeal. By judgment, dated March 7, 1996, this court, under docket number 96 CA 0105, dismissed plaintiffs' appeal on the grounds that the judgment, denying a motion for summary judgment, is a non-appealable, interlocutory judgment.
The issue before us in this supervisory writ is whether the trial court properly denied plaintiffs' motion for summary judgment in determining that the addition of an insured driver to a policy fell within the scope of a renewal or substitute insurance policy such that the initial UM selection/rejection form was valid.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322 p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618; Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La. 4/29/94); 637 So.2d 467; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d *678 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966;[3]Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Kidd v. Logan M. Killen, Inc., 640 So.2d at 618-19.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Miramon v. Woods, 25,850 p. 10 (La.App. 2nd Cir. 6/22/94); 639 So.2d 353, 359; Jarrell v. Carter, 632 So.2d at 323.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583; Kidd v. Logan M. Killen, Inc., 640 So.2d at 619. In determining whether material facts had, in fact, been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This was true even if grave doubt existed as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court was presented with a choice of reasonable inferences *679 to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences were required to be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in LSA-C.C.P. art. 966A(2) the following:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. (emphasis added.)
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).

ANALYSIS
LSA-R.S. 22:1406D(1)(a)(i) mandates UM coverage in an amount not less than the limit of bodily injury liability coverage, unless the insured rejects that coverage or selects lower limits.[4] The general rule regarding the rejection of UM coverage is that an initial valid rejection or selection of lower limits by an insured is also valid for renewal, reinstatement, or substitute policies. LSA-R.S. 22:1406D(1)(a)(i);[5]Troha v. State Farm Insurance Company, 606 So.2d 89, 90 (La.App. 3rd Cir.1992); Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241, 1242 (La.App. 3rd Cir.1991); Ruiz v. Lewis, 579 So.2d 1203, 1206-07 (La.App. 4th Cir.), writ denied, 586 So.2d 562 (La.1991).
A "renewal" policy is defined by LSA-R.S. 22:636.1A(5) as one issued and delivered to replace, at the end of the policy period, a policy previously issued and delivered by the same insurer. Troha v. State Farm Insurance Company, 606 So.2d at 91. Therefore, a renewal can occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs before the end of the first policy period. Troha v. State Farm Insurance Company, 606 So.2d at 91. Moreover, a renewal contemplates uninterrupted coverage. Troha v. State Farm Insurance Company, 606 So.2d at 91; Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d at 1242.
A "reinstatement" policy means to restore the insured to all the benefits accruing under the policy contract. Troha v. State *680 Farm Insurance Company, 606 So.2d at 91. For there to be a reinstatement, it is necessary that there be an interval during which the insured is no longer covered by insurance. Troha v. State Farm Insurance Company, 606 So.2d at 91; Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d at 1243.
In the instant case, the addition of Nicole Marino as an insured under the Allstate policy occurred during, and not at the end, of a policy period. As a result, the endorsement cannot be a renewal. Moreover, the Allstate policy provided the Dempseys with continuous coverage from November 30, 1988, through the date of the accident, such that there was no interruption in coverage during that time. As such, the endorsement was not a reinstatement.
Having determined that the endorsement, adding Nicole Marino as an insured, did not constitute a reinstatement or a renewal, we must determine whether this change in the Allstate policy was within the scope of a "substitute" policy.
While there is no statutory definition and scant jurisprudence concerning substitute policies, there are two interpretations of what constitutes a substitute policy for purposes of LSA-R.S. 22:1406D(1)(a)(i).[6] It is possible to have a substitution of insureds and/or vehicles.[7]Troha v. State Farm Insurance Company, 606 So.2d at 91. The jurisprudence reveals that the substitution of one vehicle for another constitutes a substitute policy. In Allen v. State Farm Mutual Automobile Insurance Company, 617 So.2d 1308, 1312 (La.App. 3rd Cir.1993), the court held that the substitution of one vehicle for another, regardless of the addition of comprehensive and collision coverage on the replacement vehicle, did not convert the existing policy into a new policy, but, rather constituted a substitute policy within the intendment of LSA-R.S. 22:1406D(1)(a)(i).
A majority of the courts of appeal have held that an increase in liability coverage has the effect of a new policy and, if a separate UM selection/rejection is not executed at that time, the UM coverage increases in an amount equal to the face limits of liability. Ruiz v. Lewis, 579 So.2d at 1207; Gaar v. Sowards, 573 So.2d 499, 501 (La.App. 1st Cir.), writ denied, 569 So.2d 990 (La. 1990); Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d 1250, 1255 (La.App. 3rd Cir.1989).[8] While Gaar and Guilbeau involved initial elections of UM coverage, which required separate UM selections/rejections when liability limits were subsequently increased, Ruiz involved an initial rejection of UM coverage. In Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d at 1255, our brethren of the Third Circuit stated:
[W]hen the bodily injury limits of a policy are increased, the insurer is agreeing to provide and the insured is agreeing to purchase additional bodily injury coverage not previously provided. If the original selection of lower limits of uninsured motorist coverage is presumed to remain in effect when the bodily injury limits of the policy are increased, this would result in a situation where an insured is found to reject additional uninsured motorist coverage before the opportunity exists to accept such additional coverage. We do not believe this was the intent of the legislature when it enacted La.R.S. 22:1406(D)(1)(a).
Moreover, when there are changes in the insurance policy which involve the addition of insureds or vehicles, the jurisprudence indicates that the policy is not a substitute policy, but is a new policy, which requires the *681 execution of new UM selection/rejections forms.
In several decisions, the Third Circuit has addressed the question of whether additional UM selection/rejection forms were required when alterations to existing liability policies were made. The court held that the addition of a vehicle to the existing policy, without any change in the bodily injury limits, increases the policy's coverage, thereby requiring a separate rejection of UM insurance. If a separate UM selection/rejection is not executed at that time, the UM coverage increases in an amount equal to the face limits of liability. Thibodeaux v. Champion Insurance Company, 614 So.2d 232, 233 (La. App. 3rd Cir.1993); Donaghey v. Cumis Insurance Society, 600 So.2d 829, 831 (La.App. 3rd Cir.1992).
Further, the jurisprudence indicates that changes in the insureds under a policy of insurance also requires a separate rejection of UM insurance. In Tully v. Liberty Mutual Fire Insurance Company, 516 So.2d 435, 439 (La.App. 1st Cir.1987), this court determined that the addition of a new insured and that new insured's vehicle cannot be made to a policy and still have the policy considered a renewal or substitute policy within the meaning of LSA-R.S. 22:1406D(1)(a)(i). Thereafter, our brethren of the Fifth Circuit, in Doyle v. Titan Indemnity Company, 629 So.2d 516, 520 (La.App. 5th Cir.1993), noted that the addition of an insured and/or a new vehicle cannot be made to a policy and still have the policy considered a renewal or substitute policy, citing Tully.
In the instant case, the facts are undisputed that, on November 30, 1988, Patrick and Nancy Dempsey obtained a policy of automobile liability insurance from Allstate. The liability limits under that policy were $50,000/ $100,000. On that same day, Nancy Dempsey also executed a selection/rejection form regarding UM coverage, in which she selected UM limits of $10,000/$20,000, which were lower than the liability limits provided for in the Allstate policy. Subsequently, two changes were made to the policy. First, Nicole Marino was added as an additional driver on the policy, effective June 27, 1991, which resulted in an increase in the insurance premium for the six-month policy period. Second, on August 13, 1991, a 1991 Nissan was substituted for a 1986 Nissan.
Based on the above, we find that the addition of Nicole Marino as an additional insured to the existing Allstate policy, without any change in the bodily injury limits, increased the policy's coverage, such that the policy was not a substitute policy. As such, the policy was a new one, requiring the execution of a separate selection/rejection of UM insurance. Because no new selection/rejection form was executed upon the issuance of the new policy, the initial selection/rejection form was invalid. As a result, the UM limits on the Allstate policy were equal to the limit of bodily injury liability coverage, and the trial court erred in denying plaintiffs' motion for summary judgment.

CONCLUSION
For the above reasons, the writ of certiorari, prohibition, and mandamus previously issued by this court is made peremptory. The judgment of the trial court, denying plaintiffs' motion for summary judgment and refusing to reform the policy to provide $50,000/$100,000 UM coverage, is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Allstate is assessed with all costs.
WRIT MADE PEREMPTORY. JUDGMENT DENYING MOTION FOR SUMMARY JUDGMENT REVERSED, AND CASE REMANDED.
NOTES
[1] Judge William F. Kline, Jr., is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] On September 28, 1995, the trial court signed another judgment, denying plaintiffs' motion for partial summary judgment. On October 13, 1995, pursuant to a motion to vacate judgment, the trial court vacated the September 28, 1995, judgment.
[3] By Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996, LSA-C.C.P. art. 966 was amended and reenacted as follows:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.
[4] LSA-R.S. 22:1406D(1)(a)(i) provides, in pertinent part, as follows:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900.
[5] LSA-R.S. 22:1406D(1)(a)(i) provides, in pertinent part, as follows:

Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
[6] See Footnote 5, supra.
[7] We note that LSA-R.S. 22:1406D(1)(a)(i) cannot contemplate a substitution of insurers because, by its very language, the substitute policy must be issued by the same insurer or one of its affiliates. See Faucheaux v. Boston Old Colony Insurance Company, 93-384 (La.App. 5th Cir. 3/16/94); 633 So.2d 959, 964, n. 6, writ granted in part and denied in part, 94-1296 (La. 9/30/94); 642 So.2d 858.
[8] But see Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963 (wherein the court determined that, if there is coverage and an agreement is made for different coverage, there is a substitution of policies) and Moore v. Young, 490 So.2d 519, 520-21 (La.App. 4th Cir. 1986).