734 So.2d 922 (1999)
Wanda D. SMITH
v.
Mary FORET, State Farm Mutual Automobile Insurance Company, Jim L. Ossmer, Melvin Smith and CIGNA Insurance Company
No. 98 CA 1142.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*923 Leonard A. Radlauer, New Orleans, for Plaintiff/Appellant, Wanda D. Smith.
Donald R. Klotz, Jr., Metairie, for Defendant/Appellee, Regal Insurance Company.
Brent M. Maggio, New Orleans, for Defendant, CIGNA Insurance Company.
Before: CARTER, C.J., SHORTESS, and de la HOUSSAYE,[1] JJ.
CARTER, C.J.
This is an appeal from the trial court's grant of a motion for summary judgment finding that a waiver of underinsured/uninsured motorist (UM) coverage by the Lafourche Parish School Board was invalid.

BACKGROUND
Plaintiff/appellant, Wanda Smith (Smith), was a substitute school bus driver for the Lafourche Parish School Board (School Board). On February 5, 1996, the bus Smith was operating was involved in an accident. The bus operated by Smith was owned by Melvin Smith. At the time of the accident, a policy of insurance was in effect which the School Board had obtained from CIGNA Insurance Company (CIGNA). This insurance policy provided automobile liability insurance for the subject bus, and named the bus owner, Melvin Smith, as an additional insured.

The Original (1994) Policy:
The policy which covered the subject bus was obtained by the School Board from defendant, CIGNA. The policy provided liability coverage of $1,000,000 and became effective on January 1, 1994. The parties refer to this policy as the original policy.[2] The original policy provided coverage for three categories of automobiles"SPECIFICALLY DESCRIBED `AUTOS'"; "HIRED `AUTOS' ONLY"; and "NONOWNED `AUTOS' ONLY." According to the "SCHEDULE OF COVERED AUTOS YOU OWN," which was part of the policy's Business Auto Declarations, there were 126 specifically described automobiles which were covered. The "Additional InsuredLessor" endorsement identified 105 additional insureds under the policy.
A UM selection/rejection form was executed by both the Superintendent of Schools and the School Board president on *924 February 11, 1994, waiving UM coverage under the policy.

The 1995 Policy:
Another policy was issued with the same policy number as the original policy. This second policy was designated as a "Renewal" by CIGNA on the first page of the Business Auto Declarations. The policy period for this second policy was January 1, 1995, through January 1, 1996. Unlike the original policy, the 1995 policy covered only "SPECIFICALLY DESCRIBED `AUTOS'" as "COVERED AUTOS." There were 103 vehicles described in the "SCHEDULE OF COVERED AUTOS YOU OWN" section of the 1995 policy. Additionally, a review of the policy reveals that there were 100 additional insureds designated in the "Additional InsuredLessor" endorsement to the policy.
The list of endorsements pertaining to the 1995 policy was the same as the list attached to the 1994 policy, except that the number of one of the endorsements had changed. Particularly, on the 1994 policy's endorsement list, the endorsement entitled "Louisiana ChangesCancellation and Non-Renewal" bore the number IL02770590. On the 1995 policy's list of endorsements, the number of the "Louisiana ChangesCancellation and Non-Renewal" endorsement was changed to IL02770294.
The endorsements that were actually in the record pertaining to the 1995 policy were the same with the exception of two endorsement numbers, although the content of these endorsements was the same.[3] The 1995 policy was modified by eight different "In-Term Policy Change[s]" contained in "General Purpose Endorsement[s]." Through these "General Purpose Endorsement[s]," numerous vehicles were added, deleted, and substituted, resulting in additional, as well as return premiums. Some of the "General Purpose Endorsement[s]" simply corrected valuation or clerical errors contained in the 1995 policy's "SCHEDULE OF COVERED AUTOS YOU OWN."
There was no UM waiver executed in 1995.

The 1996 Policy:
A third policy designated by the insurer as a "renewal" policy was issued in 1996, with a policy period commencing on January 1, 1996, and ending on January 1, 1997. Attached to the 1996 policy were some of the same endorsements which were attached to the original and 1995 policies. The list of endorsements contains the same endorsement numbers as those listed on the 1995 policy's endorsement list. However, we note that many of the endorsements on the 1996 list are not part of the record.
The category of "COVERED AUTOS" in the 1996 policy is the same as the category of "COVERED AUTOS" in the 1995 policy"SPECIFICALLY DESCRIBED `AUTOS.'" There are 105 vehicles described in the "SCHEDULE OF COVERED AUTOS YOU OWN" section of the 1996 policy, and there are 100 additional insureds named in the "Additional InsuredLessor" endorsements.
Another UM selection/rejection form was executed by the School Board on March 5 and 7, 1996, after the February 5, 1996 accident, waiving UM coverage under the policy.

FACTUAL AND PROCEDURAL HISTORY
On February 5, 1996, while Smith was stopped, the bus she was operating was rear-ended by a vehicle driven by Jimi *925 Ossmer (Ossmer), but owned by Mary Foret (Foret). Smith allegedly sustained back injuries in the accident.
As a result of the accident, Smith filed suit against Ossmer, Foret, State Farm Mutual Automobile Insurance Company (State Farm), as the liability insurer of Foret, Melvin Smith and CIGNA in March 1996. In September 1996, Smith amended her petition to assert a UM claim against her personal automobile liability insurer, Regal Insurance Company (Regal). Regal asserted a cross claim against CIGNA in October 1996. In response to plaintiff's petition, Melvin Smith and CIGNA filed a peremptory exception asserting the objection of no cause of action. Pursuant to a consent judgment, the exception of no cause of action was granted and Melvin Smith was dismissed with prejudice. Smith amended her petition to assert a claim for UM benefits against CIGNA. In April 1997, Smith settled with State Farm and its insureds, Foret and Ossmer, and dismissed these defendants.
Regal filed a motion for summary judgment asserting that the CIGNA policy provided UM coverage to Smith because the School Board did not reject UM coverage until after the subject accident. Accordingly, because the CIGNA policy provided UM coverage of $1,000,000, which policy was primary to the Regal policy, Regal argued it was entitled to summary judgment dismissing it from the litigation.
CIGNA opposed Regal's summary judgment. CIGNA asserted that there was no coverage under its policy because a waiver of UM had been executed by the School Board on March 5 and 7, 1996, with an effective date of January 1, 1996. Alternatively, CIGNA argued that there was a factual dispute regarding whether UM coverage was properly rejected during a prior policy period.
In June 1997, CIGNA filed a motion for summary judgment arguing that a UM rejection was executed in 1994, when the original policy was issued to the School Board. CIGNA further contended that the 1995 and 1996 policies were renewal policies; therefore, a new rejection was not necessary and the policy did not provide UM coverage on the date of the accident.
The trial court heard argument on Regal's motion for summary judgment in July 1997, and denied the motion because there were material issues of fact to be resolved. Argument on CIGNA's motion for summary judgment was never heard because Smith dismissed CIGNA from the lawsuit in November 1997, pursuant to a settlement agreement.[4] Regal also dismissed its claims against Melvin Smith and CIGNA.
In November 1997,[5] Regal filed another motion for summary judgment against Smith on the ground that it had been unduly prejudiced by Smith's dismissal of CIGNA. In this motion, Regal again argued that the March 1996 UM waiver was executed after the accident and therefore, there was UM coverage available to Smith on the date of the accident. Regal stated that CIGNA's UM limits were sufficient to compensate plaintiff for her injuries. Because of this and Smith's settlement with CIGNA for an amount which was less than the limits of its policy, Regal asserted it was entitled to a credit for the full amount of UM coverage under the CIGNA policy since the CIGNA policy was primary to the Regal policy. Regal asserted that as a consequence of this action by plaintiff, Regal was entitled to judgment dismissing it from the litigation.
Smith opposed the motion for summary judgment, contending that the February 1994 waiver of UM coverage was in effect at the time of the accident because the *926 1995 and 1996 policies were renewal policies which did not require the execution of new waivers under Louisiana law. See LSA-R.S. 22:1406 D(1)(a)(i). Based on the affidavit of Catherine Brantley, an Underwriting Manager for CIGNA, and the testimony of Elmo Broussard, Personnel Superintendent for the School Board, Smith contended that the 1995 and 1996 policies were renewals of the 1994 policy, and that the School Board has not had any UM coverage since at least January 1, 1994. Accordingly, Smith argued that there was no UM coverage under the CIGNA policy at the time of the accident and therefore, she was entitled to collect UM benefits from Regal, her personal automobile liability insurer.
A hearing was held on January 15, 1998, at the conclusion of which the trial court rendered judgment in favor of Regal. However, the trial court based its judgment on a theory that was not raised by either party in their pleadings. The trial court found that there was UM coverage under the CIGNA policy because the waiver of UM coverage was not executed by the bus drivers who were additional insureds under the policy. Accordingly, the court signed a judgment dismissing Regal from the lawsuit.
Smith appealed from the judgment asserting two assignments of error:
A. The trial court erred in granting summary judgment on the basis that the owner, who was an additional insured[,] was required to sign the uninsured motorist rejection.
B. Alternatively, the policy in question was one of renewal and the original rejection signed on February 11, 1994 was valid.
The issue in this appeal is whether the 1995 and/or 1996 insurance policies fall outside the scope of renewals, reinstatements or substitute policies and thus constitute new policies. If the 1995 and 1996 policies constitute new policies, the 1994 waiver would be invalid as a waiver of UM coverage under the 1995 and 1996 policies, and there would be UM coverage under the CIGNA policy in effect at the time of the accident. If the 1995 and 1996 policies constitute renewals, reinstatements or substitute policies, the 1994 UM waiver would be valid as concerns these policies, and there would be no UM coverage under the CIGNA policy on the date of the accident.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966; Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97); 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, *927 whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.

ANALYSIS
LSA-R.S. 22:1406 D(1)(a)(i) mandates UM coverage in an amount not less than the limit of bodily injury liability coverage, unless the insured rejects that coverage or selects lower limits. The general rule regarding the rejection of UM coverage is that an initial valid rejection or selection of lower limits by an insured is also valid for renewal, reinstatement, or substitute policies. LSA-R.S. 22:1406 D(1)(a)(i); Dempsey v. Automotive Casualty Insurance, 95-2108, pp. 7-8 (La.App. 1st Cir.6/28/96); 680 So.2d 675, 679.
A "reinstatement" policy means to restore the insured to all the benefits accruing under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured is no longer covered by insurance. Dempsey, 680 So.2d at 679-80.
In the present case, there was no interval during which the School Board lacked insurance coverage under the CIGNA policy. Thus, this case does not involve a reinstatement policy. However, we must determine whether it constitutes a new, renewal or substitute policy.
A "renewal" policy is defined by LSA-R.S. 22:636.1 A(5) as one issued and delivered to replace, at the end of the policy period, a policy previously issued and delivered by the same insurer. Therefore, a renewal can occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs before the end of the first policy period. Moreover, a renewal contemplates uninterrupted coverage. Dempsey, 680 So.2d at 679.
There is little jurisprudence concerning substitute policies. Cases have held that it is possible to have a substitution of insureds and/or vehicles without effecting a new policy. Stephenson v. Van Vleit, 96-1407, p. 12 (La.App. 3rd Cir.4/30/97); 693 So.2d 858, 865, writ denied, 97-1431 (La.9/19/97); 701 So.2d 174. However, if vehicles or insureds are added to an individual policy, then it is generally found to be a new policy rather than a substitute policy. Dempsey, 680 So.2d at 680-81; see Thibodeaux v. Champion Insurance Company, 614 So.2d 232, 233 (La.App. 3rd Cir.1993); Donaghey v. Cumis Insurance Society, 600 So.2d 829, 831 (La.App. 3rd Cir.1992). An increase in liability coverage has also been found to effect a new policy requiring a new rejection or selection of UM coverage. See Ruiz v. Lewis, 579 So.2d 1203, 1207 (La.App. 4th Cir.), writ denied, 586 So.2d 562 (La.1991).
Our review of the record reveals that there were no changes to the policy during the January 1, 1994, through January 1, 1995 policy term. However, there were differences between the 1994 and 1995 policies. Particularly, there was a change in the designation of which categories of automobiles were "COVERED AUTOS." As previously indicated, the 1994 policy defined "COVERED AUTOS" to include "SPECIFICALLY DESCRIBED `AUTOS,'" "HIRED `AUTOS'" and "NONOWNED `AUTOS.'" The 1995 policy provided coverage only to "SPECIFICALLY DESCRIBED `AUTOS.'" Accordingly, in the 1995 policy there was a deletion of coverage for two categories of "COVERED AUTOS." The issue becomes whether the change was sufficient to preclude the 1995 policy from being categorized as a renewal or substitute policy.
Not every alteration in an insurance policy or insurer's position mandates that an insurance policy be considered new, rather than a renewal. Daigle v. Allstate Insurance Company, 96-1352, p. 2 (La.App. 4th Cir.3/5/97); 690 So.2d 261, 262, writ denied, 97-0674 (La.5/1/97); 693 So.2d 738. Moreover, an insured under a commercial fleet automobile liability policy *928 is generally not required to execute a new rejection of UM coverage when he adds a new vehicle to his existing policy. A fleet policy by its nature envisions the frequent addition and subtraction of vehicles from coverage. However, in a situation where vehicles are not regularly substituted, a new rejection of UM coverage may be required. Bullock v. Homestead Insurance Co., 29,536, p. 5 (La.App. 2nd Cir.6/20/97); 697 So.2d 712, 714, writ denied, 97-1936 (La.11/7/97); 703 So.2d 1272.
We have not found, nor have the parties directed our attention to, any jurisprudence addressing the situation where the categories of covered autos were modified between consecutive policies. We recognize a distinction between changing the categories of "COVERED AUTOS" and adding, deleting and/or substituting specifically described automobiles in a policy. Thus, we cannot treat this alteration as the standard addition or subtraction of vehicles from coverage under a fleet policy. Instead, we conclude that the deletion of two categories of "COVERED AUTOS" from coverage in the 1995 policy constituted the issuance of a new policy, not a renewal policy.
When current policies are viewed as entirely new contracts, the UM limits would equal the liability coverage unless the insured signed an additional UM waiver or reduction form. Troha v. State Farm Insurance Company, 606 So.2d 89, 91 (La.App. 3rd Cir.1992). Therefore, it was necessary that a new waiver of UM coverage be executed by the School Board. Because there was no new waiver executed in connection with the 1995 and 1996 policies (until after the accident involving plaintiff), the CIGNA policy provided UM coverage to the insureds under the subject policy until the School Board's execution of the 1996 waiver of UM coverage in March.
In light of our finding that the 1995 policy was a new policy, we need not address whether the "In-term Policy Change" endorsements to the 1995 policy created substitute policies. Further, we do not address whether the 1996 policy was a new or renewal policy since the waiver executed in connection with the 1996 policy was not executed until after the accident involving the plaintiff. Although the 1996 waiver stated it was effective January 1, 1996, the waiver could not be applied retroactively if the rights of an insured would be prejudiced. See Washington v. Savoie, 92-2957, pp. 6-7 (La.4/11/94); 634 So.2d 1176, 1180.
Additionally, we are mindful of the strong public policy in favor of uninsured motorist coverage. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). In light of this strong public policy and the facts of this case, we conclude that there was UM coverage under the CIGNA policy. We recognize that this conclusion effectively denies Smith recovery of UM benefits under her personal automobile liability policy issued by Regal. However, it was Smith's choice to settle with CIGNA for less than the policy limits, despite the risk that a court would find there was UM coverage under the CIGNA policy.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs are assessed to plaintiff, Wanda Smith.
AFFIRMED.
NOTES
[1] Hon. Edward A. de la Houssaye, III, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that this 1994 policy is designated a "Renewal" in the Business Auto Declarations. However, because the parties refer to the 1994 policy as the original policy, we will consider the 1994 policy as the original policy for purposes of this opinion.
[3] The "Public Transportation Autos" endorsement was identified on the endorsement list to the 1995 policy as CA24021290; although the number on the "Public Transportation Autos" endorsement that was part of the record was CA24021293. The number of the "Louisiana ChangesCancellation and Non-Renewal" endorsement, as shown on the endorsement list was IL02770794; whereas the number of the "Louisiana ChangesCancellation and NonRenewal" endorsement which was part of the record was IL02770792.
[4] Smith settled her case with CIGNA for $2,500.
[5] Some of the pages of the memorandum in support of Regal's second motion for summary judgment are not in the record.